George Edward BOSTON, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–95–00856–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Sept. 4, 1997.

Discretionary Review Refused Feb. 4, 1998.

Stanley G. Schneider, Houston, for appellant.

Calvin Hartmann, Houston, for appellee.

Before AMIDEI, O'NEILL and DRAUGHN, JJ.

## OPINION

O'NEILL, Justice.

Appellant, George Edward Boston, pleaded not guilty to the offense of aggravated robbery and not true to an enhancement paragraph alleging a prior robbery conviction. TEX. PENAL CODE ANN. § 29.03 (Vernon 1995). The jury found him guilty as charged in the indictment and, finding the enhancement allegation to be true, assessed punishment at thirty-five years confinement in the Texas Department of Criminal Justice, Institutional Division. In twelve points of error, appellant contends (1) the prosecutor's jury argument during the punishment phase was improper, (2) the punishment phase jury charge was erroneous, (3) the trial court erred in admitting victim impact evidence from an unadjudicated extraneous offense, and (4) the trial court erred in denying defense counsel's pretrial request to withdraw due to an alleged conflict. We affirm.

## Background

At 7:00 a.m. on May 26, 1995, the complainant arrived at the Pizza Hut restaurant where she was employed as a shift manager. While engaged in her morning work she observed appellant, also an employee of the restaurant, standing at the door. She unlocked the door and allowed appellant inside. Once inside, appellant brandished a knife and instructed the complainant to open the restaurant's safe. When she explained that she was unable to open the safe, appellant became angry, pointed the knife at her, and demanded her purse. She told appellant she had no money but could withdraw some cash from her personal bank account. Appellant drove the complainant to her bank's drive-through window, where she withdrew two hundred dollars. She gave the money to appellant and asked if he would let her go. Appellant replied that he would let her out "down the street" and sped away, whereupon the complainant opened the door and jumped from the car. Appellant drove away, but was later arrested at his home.

At trial, the complainant identified appellant as the person who robbed her. Appellant testified in his own defense, and denied committing the robbery. The jury convicted appellant of aggravated robbery, and this appeal followed.

## Points of Error One Through Three

In his first, second and third points of error, appellant contends the prosecutor engaged in improper jury argument during the punishment phase of trial when he implied that the community expected the jury to sentence appellant to life imprisonment. We believe appellant has mischaracterized the prosecutor's argument as an improper appeal to community desires. The prosecutor merely asked the jury to be the voice of the community, which is a proper plea for law

enforcement. *Brown v. State*, 508 S.W.2d 91, 96 (Tex.Crim.App.1974). In any event, there was no objection to the prosecutor's argument at trial. Although appellant contends an objection was not necessary to preserve error because the prosecutor's argument was so prejudicial that an instruction to disregard could not have cured the harm, the Court of Criminal Appeals has addressed this argument and held:

> [A] defendant's "right" not to be subjected to incurable erroneous jury arguments is one of those rights that is forfeited by a failure to insist upon it ... a defendant's failure to object to a jury argument or a defendant's failure to pursue to an adverse ruling his objection to a jury argument forfeits his right to complain about the argument on appeal. Any prior cases to the contrary ... are expressly overruled. Before a defendant will be permitted to complain on appeal about an erroneous jury argument *or that an instruction to disregard could not have cured an erroneous jury argument,* he will have to show he objected and pursued his objection to an adverse ruling.

*Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim.App.1996) (emphasis added) (citations omitted).

■ Appellant forfeited his right to complain about the prosecutor's argument by failing to object at trial. Accordingly, appellant's first, second and third points of error are overruled.

### Points of Error Four Through Six

■ In his fourth, fifth and sixth points of error, appellant contends the trial court erred in submitting an erroneous jury charge during the punishment phase of trial. Specifically, appellant challenges the portion of the charge which provides that "[u]nder the law applicable in this case, the defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration im-

posed through the award of good conduct time...." Appellant claims this language regarding "good conduct time" is incorrect in the present case because he was convicted of an aggravated offense and would not be eligible for parole consideration until he served half of his thirty-five year sentence. Therefore, appellant argues, any "good conduct time" he might earn cannot be applied to reduce his sentence until he has served half of his prison sentence. Stated differently, appellant claims the jury charge misstated the law because the award of good conduct time does not *apply* to his "period of incarceration" but merely *accrues* during his period of incarceration.

■ When reviewing a jury charge for error, we undertake a two-step analysis. First, we must determine whether error exists in the charge. Second, if error exists, we must determine whether the harm caused by the error is sufficient to require reversal. TEX.CODE CRIM. PROC. ANN. art. 36.19 (Vernon 1996); *Hutch v. State*, 922 S.W.2d 166, 170–71 (Tex.Crim.App.1996). Thus, we must first address appellant's claim that the charge was erroneous.

The charge given to the jury in the present case carefully tracked the language of article 37.07 § 4(a) of the Texas Code of Criminal Procedure, and does not misstate the law.[1] Just below the "good time" instruction challenged by appellant, the charge provides:

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, *without consideration of any good time he may earn* ....

(emphasis added). Thus, contrary to appellant's argument, the charge clearly informed the jury that any "good conduct time" appellant might earn *could not* be applied to re-

---

1. Article 37.07 provides, in pertinent part:

(a) In the penalty phase of the trial of a felony case in which punishment is to be assessed by the jury rather than the court ... the court shall charge the jury in writing as follows: Under the law applicable in this case, if the defendant is sentenced to a term of imprison-

ment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn.

TEX.CODE CRIM. PROC. ANN. art. 37.07 § 4(a) (Vernon 1996).

duce his sentence until he first served half of that sentence. Reading the entire charge and viewing it in context, we find the trial judge properly instructed the jury. Appellant's fourth, fifth and sixth points of error are overruled.

### Points of Error Seven Through Nine

In his seventh, eighth and ninth points of error, appellant contends the trial court erred in admitting victim impact evidence from an unadjudicated extraneous offense. During the punishment phase of trial, the State introduced evidence of an unadjudicated aggravated robbery allegedly committed by appellant. Janie Holiday testified that on July 25, 1994, appellant entered her apartment and robbed her at knife point. After she described the details of the robbery, the prosecutor asked: "[t]his threat on your life and your children's lives by this defendant, has this in any way changed your life?" Appellant objected, claiming the evidence was irrelevant and unduly prejudicial. The trial court overruled the objection, and the witness testified that, since the robbery, she had developed problems sleeping, had nightmares, and was very nervous. She further stated that the robbery caused her to be afraid to stay home alone.

■ Appellant does not contest the admissibility of the extraneous offense, but claims the witness's testimony regarding the impact of the robbery on her life was inadmissible and harmful. Specifically, appellant claims the extraneous victim impact evidence denied him a fair punishment hearing for the offense for which he was convicted, the aggravated robbery of the complainant. In *Cantu v. State*, 939 S.W.2d 627 (Tex.Crim.App.1997), the court addressed the same issue in the context of a capital murder trial. The court held that extraneous offense victim impact evidence was inadmissible because "the danger of unfair prejudice to a defendant inherent in the introduction of 'victim impact' evidence with respect to a victim not named in the indictment on which he is being tried is unacceptably high." *Id.* at 637. The court reasoned that the admission of such evidence would improperly open the door to victim impact evidence resulting from any extrane-

ous offense committed by a defendant, and concluded that such evidence is irrelevant and unduly prejudicial. *Id.* In light of *Cantu*, we find the trial court erred in admitting Ms. Holiday's victim impact testimony. However, we conclude that the admission of such testimony was harmless and does not warrant reversal. *See* TEX.R.APP. P. 81(b)(2).

■ In determining whether error by the trial court was harmful, we must isolate the error and all of its effects, and decide whether a rational trier of fact might have reached a different result. *Harris v. State*, 790 S.W.2d 568, 587–88 (Tex.Crim.App.1989). In other words, we must find beyond a reasonable doubt that the error did not serve to increase the appellant's punishment. *Id.* at 584. In making this determination, we examine (1) the source of the error, (2) the nature of the error, (3) the extent to which the erroneous evidence was emphasized by the State, (4) its probable collateral implications, (5) the weight a juror would probably give to the erroneous evidence, and (6) whether declaring the error harmless would encourage the State to repeat the error with impunity. *Id.* at 587.

In the present case, we see nothing to indicate that the State intended to taint the proceedings by introducing Ms. Holiday's victim impact testimony. In fact, it appears the prosecutor believed at the time of trial that he was following prevailing case law. Nor did the State emphasize the victim impact testimony. During closing argument, the prosecutor discussed the details of appellant's numerous other convictions for robbery, delivery of a controlled substance, forgery, and the unauthorized use of a motor vehicle, but only briefly mentioned the impact of the unadjudicated aggravated robbery on Ms. Holiday. When viewed in the context of all the punishment evidence, it does not appear that the State unduly emphasized the victim impact testimony. *See Hoffman v. State*, 874 S.W.2d 138, 141 (Tex.App.—Houston [14th Dist.] 1994, pet. ref'd) (holding one "hint" during argument is insufficient to show State emphasized error). In addition, we do not believe the jury gave much weight to the challenged testimony. From a juror's perspective, the

primary offense was certainly egregious in that it involved robbing the complainant and threatening her life with a deadly weapon. The State's evidence against appellant was strong, and there was abundant evidence of appellant's prior felony convictions. Moreover, the evidence that appellant robbed Ms. Holiday and threatened her and her family with a knife, which was admissible, would naturally imply a detrimental impact on the victim. Finally, even with his prior convictions and the egregious nature of the charged offense, appellant only received a thirty-five year sentence out of a possible range of fifteen years to life. Based upon this record, we conclude the effect of Ms. Holiday's testimony on the jury's deliberations was minimal. Finally, we do not believe our harmless error finding will encourage the State to repeat the error with impunity. Since appellant's trial, the Court of Criminal Appeals has held that victim impact evidence arising from a defendant's extraneous offenses is irrelevant and inadmissible during the punishment phase of trial. *See Cantu,* 939 S.W.2d at 637. We believe the State will adhere to *Cantu,* and refrain from attempting to introduce this type of evidence at trial.

Because we find the erroneous admission of the challenged victim impact testimony was harmless beyond a reasonable doubt, we overrule appellant's seventh, eighth and ninth points of error.

### Points of Error Ten Through Twelve

■ In his tenth, eleventh and twelfth points of error, appellant contends the trial court erred in denying defense counsel's request to withdraw due to a conflict between counsel and appellant.[2] Prior to voir dire, the following exchange occurred:

2. Specifically, appellant's tenth, eleventh and twelfth points of error contend "the trial court denied appellant effective assistance of counsel ... by denying appellant's counsel to withdraw as appointed counsel of record because there was a conflict between counsel and appellant." Ineffective assistance claims are based on the two-prong standard articulated in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, the appellant must demonstrate that counsel's performance was so

COURT: Outside the presence of the jury both sides announced ready for trial. The jury panel is on the way. And in the case of State of Texas vs. George Edward Boston, Cause No. 695716, is there something you want to put on the record?

MR. TANNER: Yes. At this time prior to trial my name is Allen Tanner and I've been appointed to represent Mr. Boston about 10, 12 days ago. And we're getting ready for trial and we now have a conflict, and due to this conflict, Your Honor, I request to be able to withdraw as counsel to Mr. Boston. And he would like to say something also.

COURT: All right.

DEFENDANT: Yes sir. I would like to get a new lawyer, Judge Ted Poe. Me and my lawyer have a conflict. I don't feel like I'm being represented to the best of his ability. I don't think it's helping me. If it's all right with you, sir, I would like to get a new lawyer to represent me.

COURT: Just so the record's clear Mr. Tanner was appointed 14 days ago, over 10 days.

DEFENDANT: I just recently got to talk to Mr. Tanner personally Wednesday, that's the only time I have got to see him in person to talk with him about my case, you know. And I'm not trying to be no hard head or nothing but I would like a new lawyer.

COURT: Well, you told him your side of the story? I don't want you going into anything you told him, I just want to know if you have told him your side of the story. Just yes or no.

DEFENDANT: Yes, sir.

COURT: You seen the file?

deficient that it fell below an objective standard of reasonableness. *Id.* at 687, 104 S.Ct. at 2064. Second, the appellant must demonstrate the deficient performance caused prejudice such that the attorney's errors deprived appellant of a fair trial. *Id.* In this case, appellant has failed to cite any specific instance in the record demonstrating that counsel's performance "fell below an objective standard of reasonableness." *Id.* Thus, we interpret these points of error as an attack on the trial court's refusal to allow counsel to withdraw.

MR. TANNER: Yes, I have, Your Honor.

COURT: File's been open all the time?

MR. RIZZO: Yes. And is open today and this weekend if Mr. Tanner needs to look at it.

COURT: And the investigator that the Court has appointed, you have had a chance to talk with her?

MR. TANNER: Yes, sir. Cynthia Patterson, and I read the State's file at the District Attorney's office about ten—eight or ten days ago. Cynthia Patterson and myself met with the defendant and she has done everything we've asked her.

COURT: Are you ready for trial?

MR. TANNER: Not with the conflict. Your Honor. I'm ready other than the conflict that we have.

COURT: Request for new attorney is denied. Mr. Tanner will represent you; one of the best lawyers in the state.

▮▮▮ Generally, the decision to allow trial counsel to withdraw from a case rests within the sound discretion of the trial court. *Green v. State*, 840 S.W.2d 394, 408 (Tex. Crim.App.1992), *cert. denied*, 507 U.S. 1020, 113 S.Ct. 1819, 123 L.Ed.2d 449 (1993); *Brewer v. State*, 649 S.W.2d 628, 631 (Tex. Crim.App.1983). The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; rather, it is a question of whether the court acted without reference to any guiding rules and principles or acted arbitrarily or unreasonably. *Lyles v. State*, 850 S.W.2d 497, 502 (Tex.Crim.App.1993). As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion and the trial court's ruling will be upheld. *Santellan v. State*, 939 S.W.2d 155, 169 (Tex.Crim.App.1997).

▮▮▮ Appellant argues that the trial court was unaware of the nature of the alleged conflict with defense counsel and should have conducted an *in camera* hearing to determine the basis of the conflict. However, the record reflects that appellant was provided ample opportunity to inform the trial court of the nature of the conflict. Specifically, appellant explained he was dissatisfied with counsel's pretrial performance and felt he was entitled to have a different counsel appointed. After carefully inquiring as to counsel's efforts to investigate the case and his ability to prepare for trial, the court determined that counsel was adequately prepared and was ready to proceed. In so doing, the court implicitly found no good cause existed to allow counsel to withdraw. We cannot conclude from this record that the trial court abused its discretion in denying counsel's request to withdraw. Appellant's tenth, eleventh and twelfth points of error are overruled.

The judgment of the trial court is affirmed.