Affirmed and Memorandum
Opinion filed June 30, 2011.

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-10-00414-CR

___________________

 

Verdell Johnson, Appellant

 

V.

 

The State of Texas, Appellee



 



 

On
Appeal from the 56th District Court

Galveston County,
Texas



Trial Court Cause No. 09CR0432

 



 

 

MEMORANDUM OPINION

Appellant, Verdell Johnson, pled
guilty to aggravated robbery.[1] 
A jury assessed appellant’s punishment at 80 years’ confinement.  Appellant contends
that the trial court erred during his trial’s punishment phase by admitting into
evidence three photos relating to an extraneous offense.  We affirm.

Background

            Appellant was indicted on
February 12, 2009 for the aggravated robbery of Paula Flores at the Hide-Away
game room in Texas City in August 2008.  He pled guilty to the aggravated
robbery and pled true to two enhancement paragraphs on March 26, 2010.  The
first enhancement presented was a felony conviction for burglary of a
habitation on September 28, 1987.  The second enhancement presented was for a
felony conviction for robbery on June 6, 1990.  A two-day jury trial was held on
April 6, 2010 to determine appellant’s punishment.  

Flores testified at trial that she
was five months’ pregnant when she was robbed at the Hide-Away on August 16,
2008.  The door of the Hide-Away had a locking device and a cage separating the
entryway from the game room so that only someone inside could open the door to
allow entry.  When Flores opened the door for appellant, he entered, pulled out
a small handgun, and pointed it at her.  

Appellant told Flores and everyone
present to get on the floor, and Flores complied.  Flores stated that she heard
appellant or an accomplice ask her co-worker where the money was; the co-worker
responded that it was in his pocket.  Appellant or the accomplice took the
money out of her co-worker’s pocket and both then left the building.  

Appellant gave written and
audio-video statements concerning his involvement in the Flores robbery.  The
jury heard the audio-video statement and portions of the written statement at
trial.  

In his written statement, appellant
admitted that he and two other men robbed Flores at the Hide-Away in August
2008.  Appellant stated that he had planned the Flores robbery for two or three
weeks; he carried the gun during the robbery; and he was responsible for taking
control of the room while one accomplice took the money and another drove the
get-away car.  Appellant stated that he had previously played games three or
four times at the Hide-Away to ensure that there was no armed security guard.  According
to appellant’s written statement, the accomplice took money from the office in
the Hide-Away; appellant and one accomplice then ran away from the building and
hid.  The second accomplice picked them up in the get-away car and they heard
sirens approaching.  Police chased but did not catch them.  Appellant stated
that he and his two accomplices split approximately $12,000; he received $2,500
in cash and “two and a half ounces of dope.”  

Appellant testified at trial that,
when Flores opened the door to allow him to enter, he “pulled out a pistol and
told her to get on the floor and robbed her.”  He testified that he told
everyone present to get on the floor but did not threaten them.  He denied
pointing the gun at Flores’s head or face.  

Appellant testified that he decided
to tell police about the Flores robbery voluntarily, as well as several other robberies
and burglaries.  Appellant stated that he gave the police information about the
other offenses he had committed because he wanted to “cleanse” himself and
confess so he could “try to go on with [his] life.”  

In addition to testimony about the
Flores robbery, the jury also heard evidence during the punishment phase relating
to at least five extraneous offenses committed by appellant.

The first extraneous offense was the aggravated
robbery and burglary of the habitation of Margaret Johnson in December 2008.  Officer
John Ivey of the Texas City Police Department testified that he responded to a
call for the possible burglary of the home of 86-year-old Johnson.  Officer
Ivey testified that he observed no forced entry from the exterior of Johnson’s
house, but that it appeared from the disarray inside that there had been a
struggle.  Officer Ivey testified that Johnson sustained severe injuries to her
arms during the burglary.  Over appellant’s objection, the State introduced
into evidence Exhibits 13, 14, and 15; these three photos depicted large bloody
wounds on Johnson’s arms.  In addition to the three photos of Johnson’s
injuries, the jury also viewed photos of the disarray in Johnson’s house and bloodstains
on the floor.  

The second extraneous offense was the
burglary of the home of Essie Scruggs in January 2009.  Appellant’s written
statement reflects that he entered the house through a window after he pushed
in a window air conditioning unit and took a lot of jewelry, some watches,
coins, and a guitar.  Scruggs testified that the house was left in disarray
with drawers pulled out of the dressers and emptied out, and jewelry left out
on the sofa.  The jury viewed several photos of the house and the disarray
following the burglary.  

The third extraneous offense was the
burglary of the home of Michelle Sliger in June 2008. Appellant’s written statement
reflects that he broke into Sliger’s house by pushing the air conditioning unit
through the window and took “two guitars, an amp, an electric keyboard, some
laptop computers, and some copiers,” some of which he sold to a pawn shop and
the rest he traded to a drug dealer.  Sliger testified that around $4,000 worth
of property was stolen.  The jury viewed several photos of the burglarized
house, including photos of items all over the floor and dressers knocked over. 


The fourth extraneous offense was the
burglary of the home of Glen Mae Gordon in January 2009.  Appellant’s written statement
reflects that he entered Gordon’s home through a back bedroom window after
pushing in the air conditioning unit and took jewelry and coins, exchanging
some of the items for drugs and otherwise distributing the rest.  Gordon
testified at trial that her bedroom had been left in a state of disarray with
clothes everywhere and the dresser had been “ransacked.”  The jury viewed
several photos of the disarray in Gordon’s home following the burglary.  

            The fifth extraneous offense
was the burglary of the home of Reverend Larry Johnson in January 2009.  Appellant’s
written statement reflects that he entered Reverend Johnson’s home by pushing
the air conditioning unit through the window and entering behind it.  Appellant
stated that, in addition to taking jewelry, a set of gold flatware, and some
coins, he also ate some chicken that was cooking in a crockpot in the kitchen. 
Reverend Johnson testified that he noticed the house had been burglarized when
he returned home from church and saw his lunch had been bitten into.  

            The State questioned
appellant during cross-examination about his nine prior felony convictions.  Appellant
admitted he had been convicted of the following: theft, reduced from robbery, in
1970; breaking into a coin machine in 1972; sexual abuse of a child in 1980; aggravated
robbery in 1980; burglary of a building in 1987; possession of a controlled
substance in 1987; credit card abuse in 1987; burglary of a habitation in 1987;
and robbery in 1990.  Appellant admitted committing these prior offenses, except
for sexual abuse of a child.  

            At the conclusion of the
evidence, the trial court instructed the jury to sentence appellant to between
25 and 99 years’ confinement based on his plea of true to the two enhancement
paragraphs.  The jury sentenced appellant to 80 years’ confinement.  Appellant timely
appealed.

Analysis

In his sole issue on appeal, appellant argues that
the trial court abused its discretion under Texas Rule of Evidence 403 by
admitting Exhibits 13, 14, and 15 during the trial’s punishment phase.  These
exhibits are photos of injuries Margaret Johnson sustained to her arms when
appellant burglarized her home.  Appellant argues that (1) the trial court
failed to conduct a Rule 403 balancing test; and (2) the photos were unfairly prejudicial.
 

I.                  
Preservation
of Error

Preliminarily, we address the State’s
contention that appellant did not preserve his complaint because his Rule 403
argument on appeal does not comport with his objection at trial.  The State
argues that appellant objected at trial to the relevance of the three photos
but did not discuss the prejudicial value of the photos under Rule 403. 

Appellant made the following
objection to the State’s introduction of the photos:

TRIAL COUNSEL:  Your Honor, I’d object under relevance to
403.  That would be Rule 403, for the record.

THE COURT:  Okay.  [State]?

THE STATE:  Judge, we are — we’ve given notice of
extraneous offense of aggravated robbery of an elderly and burglary of a
habitation of Margaret Johnson.  We’re showing and will show that those
injuries caused [to] Margaret Johnson were caused by the defendant in the
course of both burglary and aggravated robbery.

THE COURT:  Anything else?

TRIAL COUNSEL:  I have one response to that, your Honor.  Actually
the — it’s my understanding that the notice that was given was the age had to
do — was the aggravated robbery with the age of the individual, not the injury
she sustained.

THE COURT:  Okay.  13, 14, and 15 are admitted.

To preserve a complaint
for appellate review, the complaining party must state the grounds for the
desired ruling to the trial court “with sufficient specificity to make the
trial court aware of the complaint, unless the specific grounds were apparent
from the context.”  Tex. R. App. P. 33.1(a)(1)(A); see Reyna v. State, 168 S.W.3d
173, 177 (Tex. Crim. App. 2005).  A general objection will not waive error if
the complaint is obvious to the trial court and the State.  Long v. State,
800 S.W.2d 545, 548 (Tex. Crim. App. 1990).  

By invoking Texas Rule of Evidence
403, it is apparent that appellant was objecting to the admission of the photos
because their “probative value is substantially outweighed by the danger of
unfair prejudice.”  See Tex. R. App. P. 33.1(a)(1)(A);
see also Tex. R. Evid. 403.  Accordingly, we conclude that appellant’s
objection under Rule 403 was sufficient to preserve error. 

II.              
Admission
of Photos

We now turn to appellant’s contention that the trial
court erred by admitting Exhibits 13, 14, and 15.  

We review the trial court’s decision to admit or
exclude evidence under Rule 403 for abuse of discretion.  Rodriguez v. State, 203 S.W.3d 837, 841 (Tex. Crim.
App. 2006); Roethel v. State, 80 S.W.3d 276, 280 (Tex.
App.—Austin 2002, no pet.).  Because the trial court usually is in the best
position to decide whether evidence should be admitted or excluded, we must
uphold its ruling unless its determination was so clearly wrong as to lie
outside the zone within which reasonable persons might disagree.  Winegarner
v. State, 235 S.W.3d 787, 790 (Tex. Crim. App. 2007); Hartis v. State,
183 S.W.3d 793, 801-02 (Tex. App.—Houston [14th Dist.] 2005, no pet.). 

The analysis here is informed by the Texas Code of
Criminal Procedure’s provisions governing admissibility of evidence during the
punishment stage of a non-capital criminal trial.  McGee v. State, 233
S.W.3d 315, 318 (Tex. Crim. App. 2007); see Tex. Crim. Proc. Code Ann.
art. 37.07, § (3)(a)(1) (Vernon Supp. 2009).  Pursuant to article 37.07, § (3)(a)(1),
the State may offer punishment phase evidence pertaining to any matter the
court deems relevant to sentencing, including evidence of an extraneous crime
or bad act that is shown beyond a reasonable doubt to have been committed by
the defendant.  Tex. Crim. Proc. Code Ann. art. 37.07, § (3)(a)(1);[2]
McGee, 233 S.W.3d at 318.  “Evidence is ‘relevant to sentencing,’ within
the meaning of the statute, if the evidence is ‘helpful to the jury in
determining the appropriate sentence for a particular defendant in a particular
case.’”  McGee, 233 S.W.3d at 318 (quoting Rodriguez, 203 S.W.3d at
842).  Photos are generally relevant and admissible if verbal testimony as to
matters depicted in the photos also is admissible.  See Williams v.
State, 958 S.W.2d 186, 195 (Tex. Crim. App. 1997). 

Admissibility of punishment phase evidence that the
trial court deems relevant still is subject to a Rule 403 analysis.  See Rodriguez,
203 S.W.3d at 843;   Reese v. State, 33 S.W.3d 238, 240-41 (Tex. Crim.
App. 2000); Rogers v. State, 991 S.W.2d 263, 266-67 (Tex. Crim. App. 1999).
 Under Rule 403, even relevant evidence may be excluded if its probative value “is
substantially outweighed by the danger of unfair prejudice, confusion of the
issues, or misleading the jury, or by considerations of undue delay, or
needless presentation of cumulative evidence.”  Tex. R. Evid. 403; Casey v.
State, 215 S.W.3d 870, 879 (Tex. Crim. App. 2007).  

Appellant first argues that
the trial court abused its discretion by failing to conduct a balancing test on
the record under Rule 403 before admitting Exhibits 13, 14, and 15 depicting
Johnson’s injuries.  

Once a Rule 403 objection is asserted, the trial court
must engage in the balancing test required by that rule.  Williams, 958
S.W.2d at 195; see also Caballero v. State, 919 S.W.2d 919, 922 (Tex.
App.—Houston [14th Dist.] 1996, pet. ref’d).  “However, a trial judge
is not required to sua sponte place any findings he makes or conclusions
he draws when engaging in this test into the record.”  Williams, 958
S.W.2d at 195.  “Rather, a judge is presumed to engage in the required
balancing test once Rule 403 is invoked” and the silence of the record does not
imply otherwise.  Id. at 195-96.

While the trial court did not state that it had
conducted the required balancing test, the trial court was not required to
affirmatively state so on the record; the trial court is presumed to have
engaged in the required balancing test once Rule 403 was invoked.  See id. 
Accordingly, we reject appellant’s argument. 

Appellant also argues that the trial court erred in
admitting Exhibits 13, 14, and 15 because the photos were an “attempt by the
State to prove what had already been proved [by appellant’s admission that he
caused Johnson’s injuries], and could only serve to inflame the jury against
Appellant.”  He contends that the three photos “went far beyond the mere
showing that Ms. Johnson was injured by Appellant in the course of his
commission of the offense.”  

A proper Rule 403 analysis includes, but is not
limited to, the following factors: (1) the probative value of the evidence; (2)
the potential to impress the jury in some irrational, yet indelible way; (3)
the time needed to develop the evidence; and (4) the proponent’s need for the
evidence. Erazo v. State, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004)
(citing Montgomery v. State, 810 S.W.2d 372, 389-90 (Tex. Crim. App. 1990)). 
A trial court also must consider the number of photos, their size, whether they
are in color or black and white, the detail shown in the photos, whether the
photos are gruesome, whether the body is naked or clothed, and whether the body
has been altered since the crime in some way that might enhance the
gruesomeness of the photograph to the appellant’s detriment.  Id. (citing Narvaiz v. State, 840 S.W.2d 415, 429 (Tex.
Crim. App. 1992)). We note that Exhibits 13, 14, and 15 depict Johnson fully
clothed at her home immediately following the burglary and show the injuries to
her arms. In the record, the photos are 8 by 10 inches and appear in black and
white. 

An appellate court reviewing the trial court’s
decision should find an abuse of discretion only when the trial court’s
decision was outside the zone of reasonable disagreement.  Rodriguez,
203 S.W.3d at 841.  The trial court acted within its discretion here.  See
Chamberlain v. State, 998 S.W.2d 230, 237 (Tex. Crim. App. 1999); Sonnier
v. State, 913 S.W.2d 511, 519 (Tex. Crim. App. 1995).  “Nothing was
depicted in the photographs which was not also included in the testimony of”
Officer Ivey and appellant.  See Sonnier, 913 S.W.2d at 519.  Although
the photos are “disagreeable to look at, . . . when the power of the visible
evidence emanates from nothing more than what the defendant has himself done we
cannot hold that the trial court has abused its discretion merely because it
admitted the evidence.”  Id.; see also Chamberlain, 998
S.W.2d at 237.  “A trial court does not err merely because it admits into
evidence photographs which are gruesome.”  Sonnier, 913 S.W.2d at 519.

We further conclude that harm cannot be established
from the admission into evidence of Exhibits 13, 14, and 15.

We must disregard non-constitutional errors that do
not affect the substantial rights of the defendant.  Tex. R. App. P. 44.2(b).  Substantial
rights are not affected by the erroneous admission of evidence if the appellate
court, after examining the entire record, is assured the error did not
influence the jury’s decision or only influenced it slightly.  See Motilla
v. State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002); Johnson v. State,
967 S.W.2d 410, 417 (Tex. Crim. App. 1998).  If there is no influence or only a
slight effect on the jury, reversal is not required.  See Johnson v. State,
43 S.W.3d 1, 4 (Tex. Crim. App. 2001); Kelley v. State, 22 S.W.3d 642,
645-46 (Tex. App.—Waco 2000, pet. ref’d) (error in admitting color photos of
victim covered and surrounded by blood and medical equipment had no more than a
slight influence on jury’s decision and, thus, was harmless in murder
prosecution where defendant did not dispute that he killed victim); see also
Ivey v. State, 250 S.W.3d 121, 126 (Tex. App.—Austin 2007), aff’d,
277 S.W.3d 43 (Tex. Crim. App. 2009) (“[Appellant] has not demonstrated that he
received a longer sentence or was harmed by the admission of [inadmissible evidence].”).


At trial, the jury heard detailed testimony regarding
the severe nature of Johnson’s injuries.  Officer Ivey testified that he
arrived at Johnson’s home and found her “very frightened, very upset, scared”
and unable to speak.  Officer Ivey testified that he noticed both of her arms
“from wrist to up around the elbow area were . . . severely bleeding and skin
was hanging off, as well.”  Appellant testified that, when he entered Johnson’s
home and realized she was alone, he went ahead with the burglary.  Appellant
stated that Johnson followed him through the house while appellant searched for
money and valuables.  He testified that he “would catch her by her arms and sit
her back down . . . because she was real old” and because she was moving so
slowly.  He testified that each time he touched her forearms “the skin would just
[peel] off of her arms like she had some kind of a skin disease or something.” 
He testified that he did not grab, shake, or grip her tightly, and that he sat
her down so she would not fall and hurt herself because he wanted her out of
the way while he searched the house.  

Considering the record as a whole, we cannot say that
appellant was harmed or received a longer sentence as a result of the admission
of Exhibits 13, 14, and 15 depicting Johnson’s injuries.  Although the State
discussed Johnson’s injuries at length at trial, it referred to Exhibits 13,
14, and 15 only briefly during trial and only once during closing arguments.

Any effect of Exhibits 13, 14, and 15 on the jury’s assessment
of punishment was only slight.  Solomon v. State, 49 S.W.3d 356, 365
(Tex. Crim. App. 2001) (“Substantial rights are not affected by the erroneous
admission of evidence ‘if the appellate court, after examining the record as a
whole, has fair assurance that the error did not influence the jury, or had but
a slight effect.’”) (quoting Reese, 33 S.W.3d at 243).  We overrule
appellant’s issue.

 

Conclusion

Having overruled appellant’s sole issue on appeal, we
affirm the trial court’s judgment.

                                                                                                                        

                                                                                    /s/        William
J. Boyce

                                                                                                Justice

 

 

 

Panel consists of Justices Brown,
Boyce, and Jamison.

Do
Not Publish — Tex. R. App. P. 47.2(b).









[1]
See Tex. Penal Code Ann. § 29.03 (Vernon 2011).





[2]
Article 37.07 provides that evidence “relevant
to sentencing” includes, but is not limited to: “the prior criminal record of
the defendant, his general reputation, his character, an opinion regarding his character,
the circumstances of the offense for which he is being tried, and . . . any
other evidence of an extraneous crime or bad act that is shown beyond a
reasonable doubt by evidence to have been committed by the defendant or for
which he could be held criminally responsible, regardless of whether he has
previously been charged with or finally convicted of the crime or act.” Tex.
Crim. Proc. Code Ann. art. 37.07, § (3)(a)(1).  The
test for relevancy is much broader during the punishment phase because it
allows a jury to consider more evidence in exercising its discretion to assess
the appropriate sentence for a particular defendant in a particular case.  Rodriguez,
203 S.W.3d at 842-43; Bain v. State, 115 S.W.3d 47, 50 (Tex.
App.—Texarkana 2003, pet ref’d).