Opinion filed October 31, 2019



# In The

# Eleventh Court of Appeals

_____

## No. 11-17-00305-CR

_____

## AMBER LYNN HAUGEN, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 70th District Court**

**Ector County, Texas**

**Trial Court Cause No. A-16-1450-CR**

## M E M O R A N D U M   O P I N I O N

In the indictment upon which Amber Lynn Haugen was ultimately tried, the State alleged that she "did then and there intentionally or knowingly cause [Appellant's] mouth or tongue to contact the female sexual organ of 'BH,' a child who was then and there younger than 6 years of age and not the spouse of [Appellant]." B.H. was Appellant's two-month-old daughter. The jury found Appellant guilty of the offense of aggravated sexual assault of a child as alleged in

the indictment, and it assessed her punishment at confinement for life and a $10,000 fine. *See* TEX. PENAL CODE ANN. § 22.021 (West 2019). The trial court sentenced Appellant to confinement for life without the possibility of parole,[1] and it also imposed a fine of $10,000. We affirm.

In the first of six issues on appeal, Appellant argues that the trial court erred when, during the punishment phase of the trial, it admitted evidence that B.H. had suffered an anal tear. In her second issue on appeal, Appellant complains about the trial court's admission, during the punishment phase of the trial, of evidence related to the termination of Appellant's parental rights to two children that were not the subject of this case. Appellant argues in her third issue on appeal that the trial court erred when, in the absence of a proper predicate, it admitted various sexually explicit photographs. In her fourth issue on appeal, Appellant asserts that the trial court erred when it refused to charge the jury on the lesser included offense of indecency with a child by contact. Appellant takes the position in her fifth issue on appeal that the trial court erred when it denied her motion for a directed verdict. Finally, in her sixth issue on appeal, Appellant maintains that the evidence is legally insufficient to support her conviction.

A challenge to the trial court's denial of a motion for a directed verdict is treated as a challenge to the legal sufficiency of the evidence. *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996). Because both issues invite an examination of the evidence, we will address Issues Five and Six together.

We review a challenge to the sufficiency of the evidence, regardless of whether it is denominated as a legal or factual sufficiency challenge, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v.*

---

[1]*See* TEX. GOV'T CODE ANN. § 508.145(a) (West Supp. 2018) (providing that inmates serving a sentence for certain offenses are ineligible for release on parole).

*State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

The investigation that culminated in the charges made the basis of this case began when Appellant made a complaint to personnel with the Odessa Police Department. Corporal Joseph Dominguez—then Officer Dominguez—with the Odessa Police Department, went to Appellant's apartment in response to Appellant's complaint. Corporal Dominguez testified that Appellant complained to him about text messages and photo messages that were sent to her either by her ex-boyfriend, Kelly Shambaugh, or by Edward Rawlins. Appellant allowed Corporal Dominguez to take pictures of the texts and photographs that appeared on her phone.

Mario Baeza, an investigator with the Odessa Police Department, specialized in "child crime." He contacted Appellant in October 2015 in connection with the

3

complaint that she had made. Investigator Baeza's investigation of Appellant's complaint led him to investigate charges of child pornography and aggravated sexual assault of a child.

Joshua Pirtle testified that he was a special agent with the Federal Bureau of Investigation. Special Agent Pirtle's primary role with the FBI was to investigate violent crimes against children. He became involved in this case after either someone with the Odessa Police Department or someone in the district attorney's office contacted him.

Special Agent Pirtle interviewed Appellant. The trial court admitted an audio recording of that interview into evidence without objection. In that interview, Appellant essentially admitted the State's allegations. Appellant admitted that she took pictures of herself "licking [B.H.] down below." Agent Pirtle asked Appellant if that meant "licking her vagina"; Appellant replied, "Yes."

Special Agent Pirtle also testified that Appellant told him how she sexually abused her daughter by "using her fingers to digitally penetrate, or manipulate, the infant's vagina. And, also, using her tongue to manipulate the vagina in an effort to perform oral sex." B.H. was just over two months old when Appellant sexually assaulted her.

The evidence also contains nude photographs that Appellant had taken of B.H. In at least one of those photographs, Appellant had spread open B.H.'s labia. State's Exhibits Nos. 27 and 28 included compilations of photographs, some of which depicted sexual acts. State's Exhibits Nos. 29 through 35 are individual photographs, most of which showed sexual acts. Although only a portion of a face or no face at all is shown in the photographs that depict an adult performing sexual acts on an infant, there is evidence that the physical characteristics of the adult in the photographs match Appellant's physical features. Appellant identified her own female sexual organ and buttocks that appear in State's Exhibit No. 27.

4

The evidence showed that Appellant sent the photographs and videos to her boyfriend at the time, Shambaugh, and that he shared them with other men. Special Agent Pirtle testified that Appellant told him that she did what she did because she loved Shambaugh and wanted to please him.

Under the evidence that we have just discussed, a rational trier of fact could have found beyond a reasonable doubt that Appellant, intentionally or knowingly, caused her mouth or tongue to contact the female sexual organ of B.H., a child who was, at the time of the offense, younger than six years of age and who was not Appellant's spouse. The evidence is sufficient to support the verdict of the jury. We overrule Appellant's fifth and sixth issues on appeal.

In her first issue, Appellant argues that the trial court erred when it admitted evidence, during the punishment phase of the trial, that B.H. had suffered an anal tear. Dr. Cindy Burnette, a Sexual Assault Nurse Examiner with a Doctorate in nursing, testified that, on October 19, 2015, she conducted a SANE exam on B.H. During that examination, Dr. Burnette found, among other things, a "fairly decent size" tear in B.H.'s anus. Dr. Burnette also found redness on B.H.'s female sexual organ.

In this court, Appellant argues that she objected to the admission of the anal tear evidence under Rule 402 and Rule 403 of the Texas Rules of Evidence and under Article 37.07, section 3(a)(1) of the Texas Code of Criminal Procedure.[2] However, the only objection that Appellant presented to the trial court during the trial was one based upon relevance under Article 37.07, section 3(a)(1). This claim of relevance was based upon Appellant's persistent position that there was no evidence to connect

---

[2]All references to Rule 402 in this opinion are to TEX. R. EVID. 402. All references to Rule 403 in this opinion are to TEX. R. EVID. 403. All references to Article 37.07 or Article 37.07, section 3(a)(1) in this opinion are to TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West Supp. 2018).

her with the anal tear and that it was not therefore relevant. Appellant did not, during trial, lodge either a Rule 402 or a Rule 403 objection.

In her brief to this court, Appellant claims that, before the SANE testimony began, trial counsel asked the trial court to hear Dr. Burnette's testimony outside the presence of the jury so that the trial court could "make the determination of whether this evidence was irrelevant, unreliable, and unfairly prejudicial." The record does not support that statement. To the contrary, in line with Appellant's other arguments in the trial court on this issue, the record reflects that trial counsel asked the trial court to determine "relevance and sufficiency of the evidence to go to the jury," not to determine "unfair prejudice." Appellant has not preserved error, if any, under Rule 403.[3] TEX. R. APP. P. 33.1. Even if Appellant were to argue that the matter is covered by her motion in limine, motions in limine do not preserve error in matters related to the admissibility of evidence. *Martinez v. State*, 98 S.W.3d 189, 193 (Tex. Crim. App. 2003). Appellant did not re-urge the matters covered in the motion. Appellant has waived her Rule 403 objection, and we will limit our review to Appellant's objection under Article 37.07, section 3(a)(1).

We review a trial court's decision to admit extraneous offenses at the punishment phase of trial under an abuse of discretion standard. *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002); *Bain v. State*, 115 S.W.3d 47, 50 (Tex. App.—Texarkana 2003, pet. ref'd). A trial court abuses its discretion when its decision to admit evidence lies outside the zone of reasonable disagreement. *Apolinar v. State*, 155 S.W.3d 184, 186 (Tex. Crim. App. 2005).

---

[3]Although Appellant did not preserve a Rule 402 objection, we will consider it insofar as it might inform our decision as to admissibility under Article 37.07.

Article 37.07, section 3(a)(1) of the Texas Code of Criminal Procedure provides as follows:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act. . . .

TEX. CODE CRIM. PROC. ANN. art. 37.07, § 3(a)(1) (West Supp. 2018). The Code of Criminal Procedure does not define the term "relevant"; however, the Texas Court of Criminal Appeals has stated that Rule 401 may be helpful to determine a question of relevance under Article 37.07, section 3(a)(1). *Ellison v. State*, 201 S.W.3d 714, 718 (Tex. Crim. App. 2006). Pursuant to Rule 401, evidence is relevant when it tends to make a fact more probable or less probable than it would be in the absence of the evidence and when the fact is of consequence "in determining the action." TEX. R. EVID. 401.

"The test for relevancy is much broader during the punishment phase, because it allows a jury to consider more evidence in exercising its discretion to assess punishment within the appropriate range." *Bain*, 115 S.W.3d at 50. The purpose of a punishment proceeding is not to prove guilt but, instead, to allow a factfinder to assess punishment in line with the objectives of the Texas Penal Code. *Id.*; *see Franks v. State*, No. 01-07-00253-CR, 2008 WL 4427665, at *3 (Tex. App.—Houston [1st Dist.] Oct. 2, 2008, no pet.) (mem. op., not designated for publication) (medical evidence of prior injuries to an older child by mother's boyfriend

admissible against mother in punishment phase of her trial for injury to her younger child). When a court determines relevance in the punishment phase of a trial, the important question is whether the evidence "is helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case." *Rogers v. State*, 991 S.W.2d 263, 265 (Tex. Crim. App. 1999).

As far as Appellant's argument touches upon a complaint that there is nothing to connect her to the anal tear, the burden of proof set out in Article 37.07 refers to Appellant's involvement in the act itself rather than the elements of a crime necessary for a finding of guilt. *Haley v. State*, 173 S.W.3d 510, 515 (Tex. Crim. App. 2005). In this case, the jury had just found Appellant guilty of licking her two-month-old daughter's vagina. The jury had also heard testimony about how Appellant had used her fingers to spread her baby's labia apart, how she had taken sexually explicit photographs and made videos of the abuse of and with her baby, and how she had sent the photographs and videos to her boyfriend.

Based upon the evidence that was before the trial court when it admitted the testimony about B.H.'s anal tear, the trial court could have easily determined that a jury could find beyond a reasonable doubt that the anal tear was attributable to Appellant. The anal tear evidence was relevant and was the type of evidence that would be helpful to the jury in determining the appropriate sentence for this Appellant in this particular case. The trial court did not abuse its discretion when it admitted the anal tear evidence. We overrule Appellant's first issue on appeal.

In her second issue on appeal, Appellant argues that the trial court erred when it admitted evidence during the punishment phase that two of Appellant's other children had been in the foster care program in Wisconsin and that her parental rights to those two children had been terminated before B.H. was born. As with Appellant's first issue on appeal, before the Wisconsin evidence was offered, Appellant objected on the basis of relevance under Article 37.07. The trial court

gave Appellant a running objection on "that." Appellant did not offer a Rule 403 objection when the State offered the evidence. Appellant has preserved nothing for review on her Rule 403 complaint. TEX. R. APP. P. 33.1. As we did in our consideration of Appellant's first issue on appeal, we will limit our review to Appellant's objection under Article 37.07, section 3(a)(1).

As we have said, when we determine relevance in the punishment phase of a trial, the important question is whether the evidence "is helpful to the jury in determining the appropriate sentence for a particular defendant in a particular case." *Rogers*, 991 S.W.2d at 265. Again, our review is for an abuse of discretion. *Bain*, 115 S.W.3d at 50.

Dutch Leydel testified that he is employed in the Child Welfare Department of Racine County Human Services in Racine, Wisconsin. As a part of his duties, Leydel was assigned to Appellant's case in August 2012. At that time, Appellant's only child had been removed from her custody; she had indicated that someone needed to take the child, or she would kill him.

Appellant moved to Racine from another Wisconsin county after she had met a registered sex offender online; she moved in with him in Racine. Leydel testified that Appellant saw no problem with her living with a registered sex offender. Three of her four relationships were with sex offenders.

Leydel also testified that Appellant had another child during the time that she was receiving services from the Child Welfare Department in Racine. This baby girl had been exposed to chlamydia prenatally and was removed from Appellant's custody. Ultimately, Appellant's parental rights were terminated as to both the children.

Debbie Jowett is the adoptive mother of Appellant's first two children. Jowett testified as to the difficulties that she and her husband had encountered as foster and adoptive parents of Appellant's two older children. She testified that, when the older

9

child, C.J., was placed with them, they could not touch him or comfort him; he was not eating baby food and was not "babbling" as most babies do; and they had to employ touch therapy with him "for a couple of years." Also, C.J. ate the wood on his crib and ate sheetrock that he dug out of the walls.

Jowett also testified about the younger child, S.J. S.J. has "some of the genetic things," but, Jowett testified, she is doing well otherwise. As Leydel testified, S.J. was exposed to chlamydia prenatally, was removed, and has never been with Appellant.

Appellant maintains that the trial court abused its discretion when it admitted the Wisconsin testimony because there is no evidence that any of the Wisconsin history involved sexual assault, indecency, or wrongful touching. She further asserts that the trial court abused its discretion because none of the evidence involved criminal charges; because termination is not a crime and should not be used to increase punishment; and because the burden of proof in a termination proceeding is by clear and convincing evidence rather than beyond a reasonable doubt and, therefore, cannot satisfy the burden-of-proof standards of Article 37.07. None of those objections were presented to the trial court, and we need not consider them. TEX. R. APP. P. 33.1.

To decide whether the Wisconsin evidence was relevant under Article 37.07, we must ask whether the evidence would be helpful to the jury in determining the appropriate sentence for this Appellant in this particular case. *Rogers*, 991 S.W.2d at 265. We hold that it would be and that the trial court did not abuse its discretion. We overrule Appellant's second issue on appeal.

Appellant argues in her third issue that the trial court erred when it admitted certain sexually explicit photographs when the State had not first established a proper predicate. Appellant complains that she is not properly identified as the person who is shown in the photographs. As we pointed out earlier in this opinion,

10

State's Exhibits Nos. 27 and 28 are compilations of photographs, some of which depict sexual acts but do not show many facial features. Likewise, most of State's Exhibits Nos. 29 through 35 depict sexual acts but fail to show complete faces. However, other evidence shows that the physical features in the photographs matched Appellant's features, including a blemish on her skin, matching hair, and an identical blemish on her breast. Further, the photographs were found on Appellant's phone. Additionally, the characteristics of the apartment in which Appellant lived and the place depicted in the photographs were similar. Those similarities between Appellant's apartment and the one depicted in the photographs included a mirror, a towel rack, a faucet, a sink, and blankets and covers on a bed. The evidence shows that the physical characteristics of the adult in the photographs match the physical features of Appellant's tongue, nose, face, and skin. Further, Appellant also identified her own female sexual organ and buttocks in State's Exhibit No. 27.

We hold that the trial court did not abuse its discretion when it admitted Exhibits Nos. 27, 28, 29, 30, 31, 32, 33, 34, and 35. These photographs were sufficiently linked to Appellant. All the photos were linked through Appellant's physical characteristics and the appearance of Appellant's residence and items in it. Furthermore, Appellant specifically identified herself and her female sexual organ as depicted in Exhibit No. 27. We hold that the State sufficiently established a proper predicate for the admission of the photographs. We overrule Appellant's third issue on appeal.

In Appellant's fourth issue on appeal, she proposes that the trial court erred when it did not instruct the jury on the lesser included offense of indecency with a child. Courts use a two-pronged test to determine whether a lesser included offense must be included in the jury charge when requested by a defendant. *Bullock v. State*, 509 S.W.3d 921, 924 (Tex. Crim. App. 2016). The first prong of the test, whether

an offense is a lesser included offense, is a question of law. *Id.* If it is a lesser included offense as a matter of law, the court then proceeds to determine whether some evidence exists in the record that would permit a rational jury to find that, if the defendant is guilty, she is only guilty of the lesser offense. *Id.* at 924–25; *see Hall v. State*, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 673 (Tex. Crim. App. 1993); *Royster v. State*, 622 S.W.2d 442, 446 (Tex. Crim. App. 1981); *Torres v. State*, 343 S.W.3d 297, 304 (Tex. App.—Eastland 2011, pet. ref'd).

Indecency with a child by contact is a lesser included offense of aggravated sexual assault of a child where both offenses are predicated on the same act. *Evans v. State*, 299 S.W.3d 138, 143 (Tex. Crim. App. 2009). Appellant has satisfied the first prong of the test.

We now proceed to the second prong of the test: Is there some evidence in the record that would permit a rational jury to find that, if Appellant is guilty, she is guilty only of the lesser offense? *Rousseau*, 855 S.W.2d at 673; *Torres*, 343 S.W.3d at 304. Appellant argues that the record contains some evidence of the lesser included offense. Otherwise, she argues, the State could not have proved the main offense. However, that is not the complete test. "Some evidence" is that evidence that would permit a rational jury to find that, if Appellant is guilty, she is guilty only of the lesser offense. We have outlined the evidence above and have examined the entire record. We hold that there is no evidence in the record that would permit a jury rationally to find that, if Appellant is guilty, she is guilty only of the lesser included offense. Under this record, the lesser included offense is not a valid and rational alternative to the charge against Appellant. *Hall*, 225 S.W.3d at 535–36. We overrule Appellant's fourth issue on appeal.

We affirm the judgment of the trial court.


JIM R. WRIGHT

SENIOR CHIEF JUSTICE


October 31, 2019

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Stretcher, J., and Wright, S.C.J.[4]

Willson, J., not participating.

---

[4]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.